UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **BRIGITH DAYANA GOMEZ BARCO** | **CASE NO.  6:20-CV-00497 SEC P** |
| **VERSUS** | **JUDGE MICHAEL J. JUNEAU** |
| **DIANE WITTE, ET AL** | **MAGISTRATE JUDGE WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is a petition for writ of habeas corpus (28 U.S.C. § 2241) filed by Petitioner Brigith Dayana Gomez Barco. Barco initially filed her petition pro se on April 17, 2020 and enrolled counsel on October 15, 2020.  Petitioner is an immigration detainee in the custody of the Department of Homeland Security / U.S. Immigration and Customs Enforcement ("DHS/ICE").  She is detained at the South Louisiana Correctional Center, in Basile, Louisiana. Petitioner alleges that her continued detention is unconstitutional under *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (rec. doc. 1, p. 22) and requests immediate release from detention with reasonable conditions of supervision (*id*. at p. 43).

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.  Having considered the parties' submissions and the applicable law, the undersigned recommends that the Court **GRANT** the Petition

requiring the **IMMEDIATE RELEASE** of Petitioner pending resolution of her immigration proceedings or removal, and under conditions to be specified by DHS/ICE but to exclude subsequent arrest and detention, unless she violates a condition of release, attempts to abscond, or commits any criminal offense.

## I.     Factual Background

Petitioner is a native and citizen of Venezuela who was admitted to the United States on or about February 16, 2017, as a non-immigrant visitor with authorization to remain in the United States for a temporary period not to exceed August 15, 2017. Rec. Doc. 1, p. 14.  After being convicted in United States District Court for the Southern District of Florida on several felony charges (*id*. at p. 17), and serving approximately 20 months in federal prison, she was taken into ICE custody on July 19, 2019, and ordered removed by an immigration judge on August 9, 2019. *Id*. at p. 13.

Petitioner alleges that she has remained in ICE custody beyond the presumptively reasonable 6-month post-removal order period set forth in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), and seeks immediate release.

## II.     Law & Analysis

The controlling statute in this case, 8 U.S.C. § 1231(a)(1)(A), provides that the Attorney General has ninety days after an order of removal becomes final to deport the alien. The Supreme Court has held that detention of aliens beyond this

ninety-day period is acceptable up to six months. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). This, however, does not mean that every alien not removed after six months must be released. "After this 6-month period, once the alien provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing." *Id*. "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. "[D]etermining what the 'reasonably foreseeable future' really is, is a factual determination to be undertaken by the habeas court looking into the circumstance and detention length of each individual petitioner." *Kane v. Mukasey,* 2008 U.S. Dist. LEXIS 141911, 2008 WL 11393137, at *4 (S.D. Tex. Aug. 21, 2008), *superseded by Kane v. Mukasey*, 2008 U.S. Dist. LEXIS 138999, 2008 WL 11393094 (S.D. Tex. Sep. 12, 2008) (finding habeas petition was moot after petitioner was deported).

"The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). This burden does not require the alien to show that deportation will prove "impossible" or "show the absence of any prospect of removal—no matter how unlikely or unforeseeable . . . ." *Zadvydas*, 533 U.S. at 702. "In order to shift the burden to the Government, an alien must demonstrate that the circumstances of his status or the

3

existence of the particular individual barriers to his repatriation to his country of origin are such that there is no significant likelihood of removal in the foreseeable future." *Galtogbah v. Sessions*, 2019 U.S. Dist. LEXIS 137399, 2019 WL 3766280, at *2 (W.D. La. June 18, 2019). However, "an alien's claim must be supported by more than mere speculation and conjecture." *Id*. (internal quotations and citation omitted).

Once the alien has met his initial burden, the burden shifts to the Government to "respond with evidence sufficient to rebut the alien's showing." *Zadvydas*, 533 U.S. at 701. "[F]or detention to remain reasonable, as the period of prior post removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

Petitioner has been held in ICE custody awaiting removal since July 19, 2019. Thus, the length of Petitioner's confinement is well in excess of the six-month presumptively reasonable period prescribed by the Supreme Court in *Zadvydas*. Petitioner asserts that she has cooperated fully with ICE and the removal efforts. *See* Rec. Doc. 11, pp. 5-10. According to Petitioner, there is no significant likelihood of removal in the reasonably foreseeable future "[d]ue to the ever-worsening diplomatic relations and the closure of Venezuelan airspace" (rec. doc. 18, p. 6), as well as the suspension of all travel between the United States and Venezuela due to the coronavirus, which clearly has no reasonable end in sight. *Id*. at p. 1.

4

Petitioner references the sworn report of Dr. Benjamin Goldfrank, a Professor of Diplomacy and International Relations and Latin American Studies at Seton Hall University, who received Masters and Doctoral degrees in Political Science from the University of California at Berkeley, and a B.A., Summa Cum Laude, from Harvard University, as follows:

> Dr. Goldfrank sets out in detail the reasons why ICE has been unable to remove Petitioner and other detained Venezuelans to Venezuela, and why Petitioner's removal to Venezuela is neither imminent nor likely to be accomplished in the reasonably foreseeable future. His report further establishes why the contrary opinion offered by ICE officials in this and other habeas cases before this Court is completely unfounded and why it should be rejected as unreliable by this Court.
>
> As explained at length by Dr. Goldfrank, since 1999, US-Venezuelan relations have long been in decline. Tensions between the two countries have increased since 2010, and especially since 2013, with the election of Pres. Nicolas Maduro. This has led to continual political crises in Venezuela and the breakdown of diplomatic relations between the two countries following 2018 elections returning Maduro to the presidency, which elections were roundly considered fraudulent and illegitimate. Dr. Goldfrank notes that even before COVID-19, the US-Venezuela hostilities had increased in 2019 after Juan Guiado, president of the National Assembly, declared himself president of the country, and the United States (as well as other countries) recognized him as such. This led to parallel competing "governments" within Venezuela, further economic collapse and outmigration, the closure of embassies and consulates in both countries, and the end of direct flights between the two countries. *Id.* p. 2-5.
>
> Dr. Goldfrank documents in his report that after the COVID-19 pandemic began in March 2020, political and economic conditions in Venezuela as well as US-Venezuelan relations have deteriorated even further with increased sanctions and a coup attempt led by ex-Green Berets. Venezuelan airspace has been closed to all international travel

> since March 17, 2020, and that closure has since been renewed every 30 days, most recently on October 13, 2020. *Id*. p. 5-7.
>
> Although the Maduro administration has occasionally allowed exceptions for flights with Venezuelan nationals arriving for repatriation from other countries, it has not done so for flights from the United States. The Guiado government – the government of Venezuela recognized by the United States – has called on the US to release Venezuelan detainees because of the impossibility of deportation. According to the Venezuelan Embassy in the United States, ICE has released 817 Venezuelans citizens from detention since September 2019 – in clear recognition that their removal to Venezuela is virtually impossible. But as of August 2, 2020, there were still 328 Venezuelan citizens remaining in ICE detention centers with no realistic hope of repatriation to Venezuela. *Id*.
>
> Finally, Dr. Goldfrank explains that the standoff in US-Venezuelan relations – without a regularly functioning diplomacy and without flights between the countries – is not likely to change in the near term or even medium term. This is because Venezuela's government and particularly its health system are even less prepared than other countries in Latin America to deal with COVID-19, and the region has been hit harder than any other in the world. At the same time, Maduro and other officials in his administration have characterized returning Venezuelans as a dangerous biological threat or even bioterrorists. It is unlikely, therefore, that Venezuela will reopen its airspace anytime soon. Further, Dr. Goldfrank stresses that the political instability in Venezuela, regardless of the outcome of the United States' upcoming presidential elections, is likely to continue to deteriorate. He concludes that even if the COVID-19 pandemic were to magically subside, it is virtually impossible that regular diplomatic relations and flights will resume between the United States and Venezuela within the next six months, and it remains highly unlikely within the next year. *Id*. p. 7-9.

Rec. Doc. 18, pp. 7-11 (citing report of Dr. Benjamin Goldfrank, Rec. Doc. 19, pp. 26-34).

Petitioner has provided good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. Thus, Petitioner has met her initial burden under *Zadvydas*. *See Hassoun v. Session*, 2019 U.S. Dist. LEXIS 451, 2019 WL 78984, at *4 (W.D.N.Y. Jan. 2, 2019) (finding that petitioner met his burden when he had shown that the countries with which he had an affiliation would not accept him).

The burden now shifts to the Government to rebut Petitioner's showing. Respondent counters that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future. Respondent's argument relies upon declarations of ICE officers Gary Chamberlain and Scott Ladwig. In his declaration, Chamberlain states:

> Based on the foregoing and my experience and knowledge as an acting AFOD, it is my belief that Petitioner's removal is imminent. ICE is in possession of her valid travel document and there is no foreseeable impediment to Petitioner's removal. Therefore, I believe there is a significant likelihood of removal in the reasonably for seeable future.

Rec. Doc. 10-1.

In a similar fashion, Ladwig stated, "once travel restrictions due to COVID-19 are lifted, which is currently expected to occur on October 12, 2020, removal operations to Venezuela will resume." Rec. Doc. 14-2.

In his Reply, filed by counsel, Petitioner notes that "these are almost verbatim the same baseless, unsubstantiated declarations that Judge Juneau and Magistrate

7

Judge Hanna rejected out of hand in *Castro-Balza v. Barr, et.al.*, No. 6:20-cv-00866, 2020 WL 6143643 at 12-13 (W.D. La. Sept. 17, 2020). (See, *Castro-Balza v. Barr, et.al.*, No. 6:20-cv-00866, ECF Doc. 5-1, Declaration of Scott Ladwig, ECF Doc. 18-1, Supplemental Declaration of Scott Ladwig).

As the Petitioner notes, neither Officer Chamberlain nor Officer Ladwig has been offered as an expert witness and Respondents have not provided evidence to establish that they have personal knowledge or competence to make the opinions that they offer in their declarations. Officer Chamberlain clearly has no factual basis for his "belief" that there is no foreseeable impediment to Petitioner's removal or that her removal is imminent. Similarly, Respondents offer no foundation for Officer Ladwig's statement that the travel restrictions issued by Venezuela's government "are based solely on efforts to contain the spread of the COVID-19 virus" or for his "expectation" that the Venezuelan travel restrictions will be lifted on October 12, 2020 – which we now know were not.

The Court agrees that it appears less likely today than it did in May and September of 2020 (when Chamberlain and Ladwig, respectively, signed their declarations) that Petitioner will be removed in the foreseeable future. Neither ICE's belief that Petitioner will be removed, nor the information provided by Respondent, satisfy the government's burden to rebut Petitioner's showing that she will not be removed in the foreseeable future. "[A] theoretical possibility of eventually being

removed does not satisfy the government's burden once the removal period has expired and the petitioner establishes good reason to believe her removal is not significantly likely in the reasonably foreseeable future." *Kane*, 2008 U.S. Dist. LEXIS 141911, 2008 WL 11393137 at *5; *see also Andreasyan v. Gonzales*, 446 F. Supp. 2d 1186, 1189-90 (W.D. Wash. 2006) (finding that respondent had not rebutted petitioner's showing that he would not be removed when respondent repeatedly asked for "a few more weeks" to obtain travel documents). "[I]f [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whittaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

With no significant likelihood of removal in the foreseeable future, Petitioner's detention is now unreasonable. *See Ali v. Dep't of Homeland Sec.*, 2020 U.S. Dist. LEXIS 57886, 2020 WL 1666074 (S.D. Tex. Apr. 2, 2020) (granting writ when petitioner could not be removed due to travel restrictions to Pakistan). After more than a year of detention, "Petitioner's removal need not necessarily be imminent, but it cannot be speculative." *Hassoun*, 2019 U.S. Dist. LEXIS 451, 2019 WL 78984, at *6.

### III. Conclusion

Accordingly,

9

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus and (rec. doc. 1) be **GRANTED** requiring the IMMEDIATE RELEASE of Petitioner pending resolution of her immigration proceedings or removal, and under conditions to be specified by DHS/ICE but to exclude subsequent arrest and detention, unless she violates a condition of release, attempts to abscond, or commits any criminal offense.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE in Chambers on this 19th day of November, 2020.

*[signature]*

**Carol B. Whitehurst**
**United States Magistrate Judge**